IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TONY JACKSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CIVIL NO. 12-720-GPM |
| | ) |
| DR. MAGID FAHIIM, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**MURPHY, District Judge:**

Plaintiff Tony Jackson filed this pro se lawsuit on June 18, 2012 pursuant to 42 U.S.C. § 1983 (Docs. 1, 15). Plaintiff claimed that Defendant Dr. Magid Fahim was deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights (Docs. 1, 15). Specifically, Plaintiff claimed that Dr. Fahim failed to treat Plaintiff's rectal bleeding and failed to give Plaintiff medication recommended by an outside physician (Docs. 1, 15).[1] This matter is currently before the Court on the motion for summary judgment filed by Defendant Dr. Magid Fahim (Doc. 48). For the reasons set forth below, Dr. Fahim's motion for summary judgment is granted.

### BACKGROUND

Plaintiff Tony Jackson is an inmate incarcerated within the Illinois Department of

---

[1] Dr. Fahim believes that Plaintiff also claimed that he was deliberately indifferent when he failed to order a soy-free diet for Plaintiff, and Dr. Fahim put forth an argument in his motion for summary judgment refuting this claim. However, nothing in the body of Plaintiff's complaint (Doc. 1) or the Court's threshold order (Doc. 15) indicates that Plaintiff alleged Dr. Fahim failed to order a soy-free diet for him.

Corrections for sexual assault (Doc. 50-5). He is currently incarcerated at Stateville Correctional Center, however, the events giving rise to this lawsuit occurred while he was incarcerated at Menard Correctional Center ("Menard") (Doc. 1). While Plaintiff was incarcerated at Menard, Defendant, Dr. Magid Fahim, was the Medical Director there (Doc. 50-1).

Plaintiff arrived at Menard in August 2009 (Doc. 50-5). In January 2010, Plaintiff was seen by medical professionals in the healthcare unit for periodic abdominal pain, cramping, and diarrhea (Docs. 50-1, 50-6). Various laboratory tests were ordered and came back in February 2010 as normal (Docs. 50-1, 50-6). On April 5, 2010, Plaintiff complained to a certified medical technician ("CMT") about blood in his stool, and the CMT ordered a referral to a nurse practitioner or doctor (Docs. 50-1, 50-6). Two days later, Dr. Fahim saw Plaintiff for the first time (Docs. 50-1, 50-6). Dr. Fahim reviewed Plaintiff's medical history, conducted a physical examination, and gave Plaintiff a digital rectal examination (*See* Docs. 50-1, 50-6). Dr. Fahim concluded that Plaintiff had internal hemorrhoids (Docs. 50-1, 50-6). He advised Plaintiff to increase his water intake, prescribed Preparation H, and instructed Plaintiff to follow up in three months (Docs. 50-1, 50-6).

Just over two months later, on June 13, 2010, Plaintiff again complained to a CMT about blood in his stool (Docs. 50-1, 50-6). Plaintiff reported he was not in pain and requested Preparation H, which he had voluntarily stopped using (Docs. 50-1, 50-6). Due to a lockdown at Menard, Plaintiff was not seen by a nurse practitioner or doctor until June 21, 2010 (Docs. 50-1, 50-6). At that time, Plaintiff was prescribed the Preparation H suppositories that he had requested (Docs. 50-1, 50-6).

On July 9, 2010, Plaintiff complained to a CMT of constipation and he was given Colace, a

stool softener (Docs. 50-1, 50-6). On July 13, 2010, Dr. Fahim saw Plaintiff again (Docs. 50-1, 50-6). Plaintiff was still complaining about rectal bleeding, and Dr. Fahim prescribed more Preparation H suppositories and Dibucaine, which is an ointment used to relieve pain and itching due to hemorrhoids (Docs. 50-1, 50-6). Plaintiff was ordered to follow up with Dr. Fahim in three months (Docs. 50-1, 50-6).

On July 20, 2010, Plaintiff complained to a CMT about rectal bleeding, as well as weight loss and fatigue (Docs. 50-1, 50-6). The CMT referred Plaintiff to a nurse practitioner, whom he saw four days later (Docs. 50-1, 50-6). The nurse practitioner ordered Plaintiff's weight to be checked multiple times per week and gave Plaintiff cards to test for the presence of blood in his stools (Docs. 50-1, 50-6). On August 13, 2010, Plaintiff saw the nurse practitioner again; she noted that several of the stool cards tested positive for blood, so she scheduled Plaintiff for an evaluation with Dr. Krieg and possible colonoscopy (Docs. 50-1, 50-6).

Six days later, on August 19, 2010, Dr. Krieg saw Plaintiff (Docs. 50-1, 50-6). Dr. Krieg noted that Plaintiff had been complaining of rectal bleeding for 4–5 months, and while it was initially episodic, Plaintiff now reported it present with each bowel movement (Docs. 50-1, 50-6). Dr. Krieg examined Plaintiff's rectum externally and internally and recommended Plaintiff undergo a sigmoid colonoscopy (Docs. 50-1, 50-6). On September 10, 2010, Plaintiff underwent the sigmoid colonoscopy, and based on the results, it was recommended that Plaintiff have a colonoscopy with hemorrhoid banding for further treatment (Docs. 50-1, 50-6).

Dr. Fahim saw Plaintiff again on October 12, 2010, and Dr. Fahim scheduled a discussion with "Collegial (utilization management)"[2] regarding a colonoscopy for Plaintiff (Docs. 50-1,

---

[2] Collegial is short for Collegial Review which is a process utilized by Wexford Health, a company that contracts with the state of Illinois to provide medical care to prisoners within the

50-6). Collegial approved the colonoscopy two days later (Docs. 50-1, 50-6). Plaintiff underwent the colonoscopy on November 11, 2010 at Touchette Regional Hospital (Docs. 50-1, 50-2). The operative report stated that no internal hemorrhoids were present, and Plaintiff had acute left-sided colitis[3] (Docs. 50-1, 50-2), a form of inflammatory bowel syndrome ("IBS") (Doc. 50-1). The surgeon recommended starting Plaintiff on Azulfidine (Docs. 50-1, 50-2), a medication that addresses some of the symptoms of IBS (Doc. 50-1). Following the colonoscopy, multiple attempts were made to see Plaintiff in November 2010 for his post-surgery assessment, but Menard's healthcare unit had not yet received the pathology and operative reports from Plaintiff's colonoscopy (*See* Docs. 50-1, 50-6). After the reports were received, Plaintiff saw a nurse practitioner on December 20, 2010 (Docs. 50-1, 50-6). He was given a prescription for Azulfidine (Docs. 50-1, 50-6).

Throughout 2011, Plaintiff was seen regularly in the healthcare unit and was presciped various medications (Doc. 50-1). He was given Sulfazine, which is similar to Azulfidine; Prilosec, which is used to relieve gastritis, an ulcer, and/or Gastroesophageal reflux disease; Prednisone, which is a steroid used to reduce inflammation in Plaintiff's bowel; Imuran, which is

---

IDOC. WEXFORD HEALTH SOURCES INC., *Utilization Management*, http://www.wexfordhealth.com/Services/Utilization-Management (last visited Aug. 30, 2013). According to Wexford Health's website, Collegial Review is a process where medical professionals "confer to review the patient's medical history and determine the most clinically appropriate and financially responsible approaches to inmate health care issues."

[3] Colitis is an inflammatory bowel disease (IBD) that causes long-lasting inflammation in part of your digestive tract. MAYO CLINIC, *Ulcerative Colitis*, http://www.mayoclinic.com/health/ulcerative-colitis/DS00598 (last visited Aug. 30, 2013). Left-sided colitis is an inflammation extends from the rectum up through the sigmoid and descending colon, which are located in the upper left part of the abdomen. MAYO CLINIC, *Ulcerative Colitis Symptoms*, http://www.mayoclinic.com/health/ulcerative-colitis/DS00598/DSECTION=symptoms (last visited Aug. 30, 2013).

used to relieve symptoms of IBS; "pink Bizmuth" which is similar to Pepto-Bismol, and Zantac[4] (Doc. 50-1). Dr. Fahim left Menard in August 2011 (Doc. 50-1).

## DISCUSSION

### I. Legal Standard for Summary Judgment

The standard applied to summary judgment motions under Federal Rule of Civil Procedure 56 is well-settled and has been succinctly stated as follows:

> Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In determining whether a genuine issue of material fact exists, [the Court] must view the record in a light most favorable to the nonmoving party. Because the primary purpose of summary judgment is to isolate and dispose of factually unsupported claims, the nonmovant may not rest on the pleadings but must respond, with affidavits or otherwise, setting forth specific facts showing that there is a genuine issue for trial.… A mere scintilla of evidence in support of the nonmovant's position is insufficient; a party will be successful in opposing summary judgment only when it presents definite, competent evidence to rebut the motion.

*Albiero v. City of Kankakee*, 246 F.3d 927, 931-32 (7th Cir. 2001) (citations and quotations omitted). No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted).

On July 17, 2013, Dr. Fahim filed the instant motion for summary judgment and a memorandum in support asserting that he was not deliberately indifferent to Plaintiff's medical needs, but rather provided regular and thorough medical care to Plaintiff (Docs. 48, 50). Dr.

---

[4] Zantac is a brand name for Ranitidine which is used to treat ulcers, gastroesophageal reflux disease, conditions where the stomach produces too much acid, and heartburn. U.S. NATIONAL LIBRARY OF MEDICINE , MEDLINE PLUS, *Ranitidine*, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a601106.html (last visited Aug. 30, 2013).

Fahim also filed a notice (Doc. 49) warning Plaintiff of the consequences of failing to respond to the motion for summary judgment. The notice correctly informed Plaintiff that he had to respond with his own affidavit or documentary evidence otherwise the Court would accept Dr. Fahim's factual assertions as true (Doc. 49).

Despite this notice and warning, Plaintiff failed to respond to Dr. Fahim's motion for summary judgment. Plaintiff did, however, find the time to file various unnecessary motions with the Court (Doc.s 52–54). Pursuant to Local Rule 7.1(c), the Court considers Plaintiff's failure to respond to Dr. Fahim's motion for summary judgment as an admission on the merits of the motion. SDIL-LR 7.1(c).

## II. Defendant Dr. Fahim Was Not Deliberately Indifferent to Plaintiff's Serious Medical Need.

In *Estelle v. Gamble,* the Supreme Court held that the Eighth Amendment's prohibition against cruel and unusual punishment, made applicable to the states through the Due Process Clause of the Fourteenth Amendment, imposes a duty upon states to provide adequate medical care to incarcerated individuals. 429 U.S. 97, 103 (1976). However, not every instance of arguable deficient medical care creates a cause of action for a prisoner. In order to succeed on an Eighth Amendment claim for inadequate medical care in a prison, a prisoner must show that a responsible state official was deliberately indifferent to his serious medical condition. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "This standard erects two high hurdles, which every inmate-plaintiff must clear." *Dunigan ex rel. Nyman v. Winnebago County*, 165 F.3d 587, 590 (7th Cir. 1999). First, Plaintiff must demonstrate that his medical condition is "objectively, sufficiently serious." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005), *citing Farmer*, 511 U.S. at 834 (internal quotations omitted). A serious medical condition is one "that has been

diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Edwards v. Snyder*, 478 F.3d 827, 830–31 (7th Cir. 2007). Second, Plaintiff must demonstrate that a state official acted with a sufficiently culpable state of mind—deliberate indifference. *Greeno*, 414 F.3d at 653. A medical professional acts with deliberate indifference, when they know that the prisoner's medical condition poses an excessive risk to the prisoner's health, *and* they choose a course of treatment that is "so far afield of accepted professional standards as to raise the inference that it was not actually based on medical judgment." *Duckworth v. Ahmad*, 532 F.3d 675, 680 (7th Cir. 2008), citing *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006).

Here, for the purposes of his summary judgment motion, Dr. Fahim does not contest the first prong of the deliberate indifference analysis—a serious medical condition (*See* Docs. 53, 68, 71). Therefore, the issue presented by the summary judgment motion is whether Dr. Fahim was deliberately indifferent to Plaintiff's serious medical needs. Plaintiff claims Dr. Fahim was deliberately indifferent to his serious medical needs because Dr. Fahim failed to treat his rectal bleeding and failed to give Plaintiff medication recommended by an outside physician.

### A. Rectal bleeding

Dr. Fahim diagnosed Plaintiff's rectal bleeding as internal hemorrhoids and treated him for such for approximately seven months until Plaintiff underwent a colonoscopy which identified that Plaintiff actually had IBS. Plaintiff's complaint is essentially that Dr. Fahim misdiagnosed his rectal bleeding and pursued a course of treatment that did not alleviate his symptoms. However, in viewing the facts in the light most favorable to Plaintiff, the Court finds that there is no evidence that Dr. Fahim's diagnosis and chosen course of treatment were so far afield of

accepted professional standards as to raise an inference of deliberate indifference.

The undisputed evidence shows that Dr. Fahim diagnosed Plaintiff with internal hemorrhoids based on a review of Plaintiff's medical history and lab results, Plaintiff's self-reported symptoms, and a physical exam. Additionally, the undisputed evidence shows that Dr. Fahim, and other healthcare professionals at Menard, were consistently responsive to Plaintiff's requests for treatment. From January 2010 until his colonoscopy in November 2010, Plaintiff was seen by a healthcare professional on at least twelve occasions, including three times by a CMT and nine times by a nurse practitioner or medical doctor. Dr. Fahim personally saw Plaintiff on at least three of those occasions. Plaintiff was initially prescribed medications, including Preparation H and Colace. When that course of treatment proved unsuccessful, more lab tests were done, weight checks were ordered, stool cards were provided, and a sigmoid colonoscopy was performed. When the physician who performed the sigmoid colonoscopy recommended a colonoscopy, Dr. Fahim immediately took the necessary steps to secure approval for the procedure.

In light of the totality of care Plaintiff received, no reasonable jury could find that Dr. Fahim was deliberately indifferent with respect to the diagnosis and treatment of Plaintiff's rectal bleeding. It is clear that any purported misdiagnosis and mistreatment occurred despite the diligent effort of Dr. Fahim and other healthcare professionals on Menard's medical staff. At worst, the misdiagnosis and mistreatment constitutes negligence or medical malpractice, and it is well-established that negligent diagnosis or treatment does not constitute deliberate indifference. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).

    **B. Medication Recommended by Surgeon**

Plaintiff claims that Dr. Fahim was deliberately indifferent when he refused to provide Plaintiff with the medication prescribed by the surgeon who performed Plaintiff's colonoscopy. Plaintiff alleges that as a result he suffered additional rectal bleeding. However, in viewing the facts in the light most favorable to Plaintiff, the Court finds that there is simply no evidence to support Plaintiff's argument.

The undisputed evidence shows that when Plaintiff returned to Menard following the colonoscopy, Dr. Fahim was given only the discharge order from Touchette Regional Hospital which does not indicate any medication was recommended by the surgeon (Docs. 50, 50-3, 50-6). Rather the operative report indicates that the surgeon recommended Azulfidine for Plaintiff (Docs. 50, 50-2). The healthcare unit at Menard did not receive the operative report from Touchette until sometime in December 2010 (*See* Docs. 50, 50-6). At Plaintiff's first appointment after the report arrived, Plaintiff was given a prescription for Azulfidine (Docs. 50, 50-1 50-6).

It is clear that neither Dr. Fahim, nor any other healthcare professionals on Menard's medical staff, refused to provide Plaintiff with Azulfidine; there was simply a delay of just over a month in providing it to Plaintiff. It is true that delays in treating painful medical conditions may support a deliberate-indifference claim, but a plaintiff must also show that the defendants deliberately disregarded the harm caused by the delay. *Williams v. Guzman*, 346 F. App'x 102, 106 (7th Cir. 2009) (internal citations omitted). Here, the undisputed evidence shows that nobody on the medical staff at Menard, including Dr. Fahim, was even aware that Azulfidine had been recommended for Plaintiff. The undisputed evidence also shows that as soon as it was discovered that Azulfidine had been recommended, the nurse practitioner ordered it for Plaintiff. Therefore,

no reasonable jury could find that Dr. Fahim was deliberately indifferent with respect to the delay in prescribing Azulfidine to Plaintiff.   *See Id.*

## CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment filed by Defendant Dr. Magid Fahim (Doc. 48) is **GRANTED**.   Defendant is **DISMISSED with prejudice** from this action.   Judgment shall enter accordingly and the Clerk of the Court shall close this case.

**IT IS SO ORDERED.**

DATED:   September 4, 2013

s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Judge